IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | No.  17 CR 236 |
| JOSEPH JONES, and | ) | Judge Andrea Wood |
| ED SCHIMENTI, | ) | |
|     Defendants. | ) | |

**EDWARD SCHIMENTI'S AND JOSEPH JONES' MOTION TO DISMISS COUNT I OF THE SUPERCEEDING INDICTMENT AS UNCONSTITUTIONALLY OVERBROAD AND VOID FOR VAGUENESS**

Now Comes Defendants, EDWARD SCHIMENTI, by his attorneys JOSHUA B. ADAMS, and ALANA DE LEON, and JOSEPH JONES by his attorney PATRICK E. BOYLE and respectfully requests this honorable court to dismiss Count I of the superceeding indictment and declare 18 U.S.C. §2339B unconstitutionally void for vagueness and overbroad. In support of their motion, Mr. Schimenti and Mr. Jones state as follows.

**I.     Background**

The government charged Mr. Schimenti and Mr. Jones with providing material support to a terrorist organization, namely "ISIS," in violation of 18 U.S.C. §2339B. Specifically, the government alleges this material support came in the form of providing cell phones to an individual who told Mr. Schimenti and Mr. Jones he would provide them to an aunt in Detroit. It was then claimed that those phones would somehow make their way to a purported combat zone under ISIS control. At the time the UCs and the CHS requested the cell phones from Mr. Schimenti and Mr. Jones, the CHS did not identify himself as a member of the a Foreign Terrorist Organization ("FTO"). In fact, the CHS acknowledged on numerous occasions that he was not a member of any FTO. Nor were any of the UCs.

1

As a threshold matter, despite the abundance of § 2339B criminal prosecutions, no appellate court has ever specifically addressed the elements necessary for a court to deem the individual receiving the support to be part of an FTO. The lack of clear judicial framework for who is a member of a FTO receiving "material support" is especially troubling for individuals such as Mr. Schimenti and Mr. Jones facing criminal prosecution, and significant prison sentences.

The prohibitions against personnel in §2339B apply only when an individual knowingly attempts or agrees "to work under that terrorist organization's direction or control, or to organize, manage, supervise, or otherwise direct operation." §2339B. The statute does not prohibit independent acts of advocacy or even mere membership in the terrorist organization.

This motion addresses §2339B's unconstitutionality as applied to Mr. Schimenti and Mr. Jones. A statute may be invalidated as overbroad as applied to them if a substantial portion of its application criminalizes protected activity. Moreover, a statute is void for vagueness when it fails to give sufficient notice of the actual conduct prohibited, or permits arbitrary or selective enforcement of that statute.

In this case, the lack of appellate court decisions to enumerate the elements necessary to determine whether the person received support is a member of the FTO renders this statute unconstitutional. Moreover, the definition of "engage[ment] in terrorist activity," as defined in the Immigration and Nationality Act, is overbroad because it penalizes independent advocacy, in violation of the ruling of *Holder v. Humanitarian Law Project*, 561 U.S.1, 18, 24 (2010). The statute is also vague for its overbreadthness as applied to both men because it criminalizes protected speech under the First Amendment. Finally, ISIL's quasi-governmental status renders the definition of "personnel" in the material

support statute ambiguous. That statute only prohibits personnel support that is provided under the "direction or control" of the challenged organization. But when the outlawed organization controls territory to which an individual might travel, control by the organization is inherent in mere presence. Thus, where presence effectively becomes support, the material support statute unconstitutionally merges First Amendment expressive activity (in the form of freedom of expression, travel and association) with activity criminalized under federal law.

**The Superseding Indictment**

Mr. Schimenti and Mr. Jones are charged in a superseding indictment with attempted provision of, and conspiracy to provide, material support to the Islamic State of Iraq and the Levant ("ISIL"), knowing ISIL to be a designated foreign terrorist organization, and/or engaged in terrorism or terrorist activity, in violation of 18 U.S.C. § 2339B. Mr. Schimenti is also charged with one count of making a false statement, in violation of §1001. The specific form of material support at issue concerns Mr. Jones and Mr. Schimenti's gathering of cell phones for the CHS in this matter.

The crux of the government's allegations center around the CHS, who claimed to have family in Syria and wanted to support ISIS and take up arms against the Syrian government. According to the CHS, he had a purported brother living in Syria who was living and working in a territory under ISIS control. At the time the CHS met Mr. Schimenti and Mr. Jones, in November 2016, he did not hold *himself* out as a member of ISIS. *See* Compl., at ¶16. In fact, the CHS's goal had been to get Mr. Schimenti and Mr. Jones to agree to help him "prepare" to join ISIS. This is despite the fact that the CHS knew that neither Mr. Schimenti nor Mr. Jones were members of ISIS. At no time during this

investigation did the CHS, or any other government agent acting in an undercover capacity claim to have any affiliation with any FTO.

Only after much prodding by these undercover government actors did Mr. Schimenti and Mr. Jones obtain and give cell phones to the government actors.

**II.     Argument**

    **1.   THE INDICTMENT'S MATERIAL SUPPORT CHARGES ARE VOID FOR VAGUENESS AND OVERBREADTH**

      A.  Legal Standard

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." This guarantee is violated where a person's life, liberty or property are taken away "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S.Ct. 2551, 2556 (2015) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (noting "[v]ague laws may trap the innocent by not providing fair warning"). The *Johnson* Court elaborates: "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.'" *Id*. at 2557 (*quoting Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).

Attacks on statutes on constitutional vagueness grounds can take one of two forms – a "facial" attack or an "as applied" attack. In a facial attack, a person must "establish that no set of circumstances exists under which [the law] would be valid, ... or that the statute lacks any plainly legitimate sweep*." United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal quotation marks and citations omitted).

4

In *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) (hereafter *HLP*), a case addressing the reach of the material support statute to activities associated with the humanitarian arm of a designated terrorist organization, the Supreme Court rejected a vagueness challenge to the statute on an as-applied basis. In its decision, the Court made three observations relevant to the instant case.

*First*, the material support statute does not penalize independent acts of advocacy. *See id.* at 24 ("any independent advocacy in which plaintiffs wish to engage is not prohibited by § 2339B"); *see also id.* at 23 ("[t]he statute makes clear that 'personnel' does not cover *independent* advocacy") (emphasis in original); *see also id.* at 26 (the First Amendment left unprotected only the "narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations").

*Second*, the material support statute does not penalize mere membership in an organization. *See id.* at 18 ("Section 2339B does not criminalize mere membership in a designated foreign terrorist organization. It instead prohibits providing 'material support' to such a group"); *see also id.* at 39 ("the statute does not penalize mere association with a foreign terrorist organization").

*Third*, in upholding the statute in *HLP*, the Court was not taking the position that the statute would survive all future as-applied challenges. *See id.* at 39 ("this is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny").

Here, Mr. Schimenti and Mr. Jones challenge §2339B under the "as applied" doctrine. Where First-Amendment protected activity is at issue, the Supreme Court has recognized a more relaxed "type of facial challenge, whereby a law may be invalidated

5

as overbroad if "a substantial number of its applications are unconstitutional" in relation to its "plainly legitimate sweep." *Stevens*, 559 U.S. at 472.

"The distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Federal Election Com'n.*, 558 U.S. 310, 331 (2010). A defendant may invoke the overbreadth doctrine on the ground that "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). "To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id*. With these principles in mind, we turn to Mr. Schimenti's and Mr. Jones' challenge to Section 2339B.

**A.     §2339B does not contain any standards to define who is a member of an FTO**

The Defendants are charged with conspiracy to provide material support to the Islamic State of Iraq and the Levant ("ISIL"), in violation of 18 U.S.C. § 2339B. That statute provides that to violate its provisions, "a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as

defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989)." *Id.* Thus, the statute sets forth three alternative mens rea pre-requisites:

6

*First*, the defendant knows that ISIL is a designated terrorist organization, as defined under 18 U.S.C. § 2339B(g)(6), which in turn references Section 219 of the Immigration and Nationality Act – the provisions setting forth the procedure for the Secretary of State to designate an organization as a terrorist organization. *See* 8 U.S. Code § 1189.

*Second*, the defendant knows that ISIL has engaged in or engages in terrorist activity as defined under the INA.

Or *third*, the defendant knows that ISIL has engaged in or engages in terrorism, as defined under the Foreign Relations Authorization Act ("FRAA"), which defines terrorism as "premeditated, politically motivated violence perpetrated against noncombatant targets by *subnational groups* or *clandestine agents*." 22 U.S.C. § 2656f(d)(2) (emphasis added).

However, §2339B imposes criminal liability on individuals who "knowingly provide material support or resources to a foreign terrorist organization, or attempt or conspire to do so." §2339B. Noticeably absent in this statute is a definition of *who* is considered a member of the FTO. Consequently, the plain language of the statute fails to give adequate notice or guidance to a potential defendant as to what type of individual they cannot interact with unlawfully.

Based on the FBI's Complaint in this matter, the CHS had not been a member of ISIS *at any time* he interjected himself with Mr. Schimenti and Mr. Jones. For example, on February 8, 2017, he told Mr. Schimenti that his brother joined ISIS. Compl., ¶78. He merely stated that he hoped to join his brother in Syria one day.

§2339B(h) is particularly instructive in this situation. That statute provides

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has

> knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with [one] or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

§2339B(h).

Based on a plain reading of the text, neither Mr. Schimenti nor Mr. Jones can fall within the scope of §2339B. At no time did Mr. Schimenti or Mr. Jones work under ISIS' direction or control. The person they believed to help, the CHS, expressly stated on numerous occasions that he was *not* an ISIS member, only that his brother worked in territory controlled by ISIS. Therefore, Mr. Schimenti and Mr. Jones had been helping an individual who had not been under ISIS' direct control. He was merely a person interested in traveling to Syria with the *hopes* of locating and being reunited with his family whether they be in ISIS territory or not.

    B.    The Definitions of "Terrorism" and "Terrorist Activity" in the Material Support Statute Are Overbroad and Void for Vagueness as Applied to Efforts to Join ISIL

        a.    <u>The Definition of "Engage[ment] in Terrorist Activity" Under the INA is Unconstitutionally Overbroad and Vague</u>

The definition of "engage[ment]" in terrorist activity under the INA is unconstitutionally overbroad because, in direct contradiction to the Supreme Court's holding in *HLP*, it penalizes independent advocacy and mere membership in a terrorist organization. *See, e.g.,* 8 U.S.C. § 1182(a)(3)(B)(iv)(V) (engaging in terrorist activity includes the act of "solicit[ing] any individual . . . to engage in conduct otherwise described in this section"); 8 U.S.C. § 1182(a)(3)(B)(iv)(V) (engaging in terrorist activity includes the act merely of "solicit[ing] any individual . . . for membership in a

8

terrorist organization"). In *HLP*, the Supreme Court was clear that acts of independent advocacy related to a terrorist organization and membership of a terrorist organization itself are protected activities under the First Amendment, and cannot come within the ambit of the material support statute. *See HLP*, 561 U.S. at 24 ("any independent advocacy in which plaintiffs wish to engage is not prohibited by § 2339B"); *see also id.* at 18 ("Section 2339B does not criminalize mere membership in a designated foreign terrorist organization).

Accordingly, the INA's definition of "engage[ment] in terrorist activity" is unconstitutionally overbroad as it encompasses protected activity. *See Stevens*, 559 U.S. at 473 (a law may be invalidated as overbroad if "a substantial number of its applications are unconstitutional"); *see also Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) (a statute is unconstitutionally overbroad if it "does not aim specifically at the evils within the allowable area of control [by the government] but ... sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech"). As a result of the statute's vagueness, it could potentially penalize protected freedom of speech and association, and subvert the presumption of innocence.

The INA "engage[ment] in terrorist activity" definition also violates the vagueness doctrine both because it is fails to give adequate notice of what is prohibited, and because it permits arbitrary and selective enforcement. As an initial matter, it is important to note that the INA definition does not match the traditional definition of terrorist activity, i.e., "acts dangerous to human life that violate federal or state law" and appear to be intended "(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination or kidnapping." *See* 18 U.S.C. § 2331

(defining international and domestic terrorism). Mere political speech or advocacy should not be punished under the statute. *See McAllister v. A.G.*, 444 F.3d 178, 188 (3d Cir. 2005) (the "political offense" exception does apply to INA's definition of terrorist activities). In *McAllister*, the Third Circuit found the INA's definition of terrorist activities was not overbroad or vague, but this decision was issued prior to the Supreme Court's decision in *HLP*.

In addition, the broadness of the definition and its lack of respect for protected political speech or advocacy, grants unlimited discretion to agents, prosecutors, judges and juries to target individuals on discriminatory and arbitrary grounds. As such, the "engage[ment] in terrorist activity" definition in the INA "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *See Johnson*, 135 S.Ct. at 2558; *see also Grayned*, 408 U.S. at 109 ("[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application").

C. <u>The Definition of "Material Support" in the Form of Personnel is Void for Vagueness as Applied to Efforts to Join ISIL</u>

Section 2339B makes it unlawful to "provide[ ] material support or resources to a foreign terrorist organization, or attempt[ ] or conspire[ ] to do so...." 18 U.S.C. § 339B(a)(1). In 2004, Congress passed the Intelligence Reform and Terrorism Prevention Act (IRTPA), which amended § 2339B in several key ways, including the concept of material support in the form of "personnel." Specifically, to address vagueness and overbreadth challenges, IRTPA delimited the prohibition on providing "personnel," by specifying that § 2339B(a) criminalizes the provision of "personnel" to a foreign terrorist organization only where a person, alone or with others, "[work]s under

10

that terrorist organization's direction or control or . . . organize[s], manage[s], supervise[s], or otherwise direct[s] the operation of that organization." 18 U.S.C. § 2339B(h). Section 2339B(h) also states that the ban on "personnel" does not criminalize the conduct of "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives." *Id.* Here, none of the government actors that Mr. Schimenti and Mr. Jones interacted with even claimed to have been members of ISIS. Consequently, none of their actions can be characterized as being "under the control of ISIS."

In interpreting § 2339B, as amended by IRTPA, the Supreme Court made clear in *HLP* that the "personnel" prong of the material support statute does not encompass acts of independent advocacy. *See HLP*, 561 U.S. at 18, 24; *see also Scales v. United States*, 367 U.S. 203, 220-22 (1961) (person could not be convicted under statute that prohibited membership in a group advocating the violent overthrow of the government unless he had knowledge of the group's illegal advocacy and a specific intent to bring about violent overthrow). The dividing line, however, between mere membership and being subject to control and direction is difficult to demarcate in the context of ISIL. ISIL proclaims itself a state.

Moreover, there is a reasonable argument to be made that it is *de facto* a state. At the very least, its status as an actual, transitioning or simply aspiring state is ambiguous and vague. Arguably, any one who "joins" it or even travels within its borders is consenting to its direction and control. *HJP* and *Scales* are clear that mere membership and association are not crimes under §2339B. Mere travel to Syria or any other territory under ISIS control, or an express willingness to "join" ISIL, cannot constitutionally be equated with material support under *Scales* and *HLP*. Accordingly, the material support

11

statute is void for vagueness as applied to Mr. Schimenti and Mr. Jones in this case.

## CONCLUSION

For the foregoing reasons, Mr. Schimenti and Mr. Jones respectfully request that this Honorable Court dismiss Count I of the superceeding indictment.

Respectfully submitted,

/s/Joshua B. Adams
Joshua B. Adams
Counsel for Ed Schimenti

/s/Alana De Leon
Alana De Leon
Counsel for Ed Schimenti

/s/Patrick Boyle
Patrick Boyle
Counsel for Joseph Jones

Joshua B. Adams
LAW OFFICES OF JOSHUA B. ADAMS, P.C.
53 W. Jackson Blvd., Suite 1515
Chicago, IL 60604
(312)566-9173

Alana De Leon
Law Office of Alana De Leon
1016 W. Jackson Blvd.
Chicago, IL

Patrick E. Boyle
155 N. Michigan Ave. #562
Chicago, IL 60601
(312) 565-2888