UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH D. JONES and<br>EDWARD SCHIMENTI | No. 17 CR 236<br><br>Hon. Andrea R. Wood |

**GOVERNMENT'S RESPONSE TO DEFENDANTS'
MOTION TO COMPEL ADDITIONAL DISCOVERY**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits its response to defendants Joseph D. Jones and Edward Schimenti's motion to compel additional discovery regarding the government's surveillance and investigation (Dkt. #84).

**I.     BACKGROUND**

Between February and April 2017, defendants conspired and attempted to provide material support and resources—specifically, personnel and cellular telephones—to the Islamic State of Iraq and al Sham ("ISIS"), a designated foreign terrorist organization. Accordingly, defendants were charged with violating Title 18, United States Code, Section 2339B(a)(1). In addition, defendant Schimenti has been charged with making false statements involving international terrorism to the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001(a)(2).

## II. ARGUMENT

Defendants' motion for additional discovery should be denied. Defendants' discovery motion requests a wide range of material relating to the government's surveillance and investigation. Before delving into the details, however, the government should emphasize that it has provided, and will continue to provide, defendants with pretrial discovery consistent with governing discovery rules. The government has embraced a broad view of its discovery obligations and furnished the defense with extensive discovery, both classified and unclassified, including emails, text messages, internet activity, audio recordings, video recordings, computer evidence, recorded telephone calls, and FBI reports.

Some of defendants' requests involve material which, if it exists at all, would be classified for reasons of national security. To the extent defendants' motion deals with relevant classified information that has not been previously provided, those matters would have been addressed by the government in a separate pleading filed pursuant to CIPA (*see* Dkt. #78). As such, the responses to defendants' specific requests set forth below should be taken only to refer to non-classified materials in the possession of the government.

### A. Governing Law

The government's obligations regarding what materials it must produce in discovery and when such production must occur are established by statute, the Federal and Local Rules of Criminal Procedure, and case law. *See, e.g.*, 18 U.S.C. §§ 3500, 3505(b); Fed. R. Crim. P. 12, 12.1, 12.2, 12.3, 16, 26.2, and 46(j); Local Crim.

R. 16.1; *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). Under *Brady*, prosecutors have a duty to disclose any information in the possession of the prosecution team that is favorable to the defense and material either to guilt or punishment. 373 U.S. at 88. Information favorable to the defense includes evidence which "would tend to exculpate [the defendant] or reduce the penalty," *id.*, and evidence regarding the reliability or credibility of a witness. *See Giglio*, 405 U.S. at 154–55.

Prosecutors also have an obligation to search for and disclose any relevant written or recorded statements of the defendant within the government's possession, custody, or control, upon the defendant's request, *see* Fed. R. Crim. P. 16, and any written or recorded statement of a witness called by the government to testify at a criminal proceeding, which relates to the subject matter as to which the witness has testified. *See* Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. A defendant is further entitled to documents, objects, and reports of examination that are material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E)(i) and (F)(iii).

Witness statements, however, are not subject to immediate production. Rule 16(a)(2) exempts from pretrial discovery "statements made by prospective government witnesses except as provided in [the Jencks Act]." The Jencks Act, in turn, bars the compelled disclosure of witness statements, including grand jury testimony, until after direct examination of the witness in question. *See* 18 U.S.C. § 3500(a) (no "statement or report" made by "a Government witness or prospective

3

Government witness (other than the defendant)" shall be the subject of subpoena, discovery, or inspection "until said witness has testified on direct examination" at trial); *United States v. Williams*, 536 F.2d 1202, 1204 (7th Cir. 1976) (by "the express terms of 18 U.S.C. § 3500, the government could not have been required to deliver any 3500 material to defense counsel until the witness to whom the material pertained had completed his testimony on direct examination"). One of the reasons for the Jencks Act is to protect "government files against unwarranted intrusions." *United States v. Isgro*, 974 F.2d 1091, 1095 (9th Cir. 1992).

Where defendants request wide-ranging discovery without establishing the relevance and materiality of the information sought, courts have consistently held that the government need not engage in a fishing expedition on behalf of a defendant. *See United States v. Nixon*, 418 U.S. 683, 700 (1974). The government is "not require[d] . . . to divulge every possible shred of evidence that could conceivably benefit the defendant." *United States v. Hamilton*, 107 F.3d 499, 509 (7th Cir. 1997). Under Rule 16, the government must make available to the defendant any requested items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). For a defendant to show materiality under this rule, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975). That is, "evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence,

4

aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted).

### B. Discovery Previously Tendered

Consistent with its discovery obligations, the government has produced over 230 discs containing over 110 audio and video recordings and tens of thousands of pages of documents, including tens of thousands of pages of email, online activity, and other electronic communications, and over 13,000 pages of FBI reports, in addition to a substantial amount of classified discovery. To facilitate the defense's review, the government provided a detailed log cataloging this discovery. Finally, the government has also returned or made available *all* material recovered from the search warrant executed on defendant Jones's residence, including all computers or other electronic media seized pursuant to that warrant.

In a letter accompanying the government's May 15, 2017 production, the government agreed to preserve all written notes of government agents in existence at that time. The government also represented that, one week prior to trial, it would provide materials required by the Jencks Act (§ 3500) and *Giglio*. Moreover, the government represented that, to the extent it obtained any additional evidence that must be disclosed per *Brady*, the government would disclose such evidence promptly. Finally, the government requested reciprocal discovery under Rule 16.

5

### C. Defendants' Specific Requests

#### 1. All Statements of Defendant, Including Recorded Face-to-Face Conversations, Telephone Calls, Text Messages, Email Correspondence, Notes, or Other Accounts of Recorded Verbal or Written Interactions

Defendants assert that they need all of their written or recorded statements, but Rule 16(a)(1)(B), the governing provision, only entitles them to "*relevant* written or recorded statement[s] by the defendant[s] . . . within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(B)(i) (emphasis added). That said, the government has interpreted relevance broadly and taken account of the anticipated entrapment defense in providing defendants' statements. First, the government has produced all recorded face-to-face conversations with defendants in the government's possession, returned or made available for return all computers and phones seized pursuant to the search warrant, and produced any forensic copies of those computers.[1] Second, the government has produced a substantial amount of defendants' emails, phone calls, text messages, and other internet activity in the government's possession. Any remaining relevant statements not produced would have been addressed in the government's CIPA motion.

If the government identifies and obtains any additional relevant statements of defendants, as contemplated by Rule 16, it will produce them consistent with its discovery obligations, or will address them promptly with the Court. As such, the

---

[1] The government recently discovered that a forensic copy of one phone was inadvertently not produced to defense counsel (the phone has been returned or has been made available for return). A copy is being made and will be produced forthwith.

defendants' request should be denied as moot. *See, e.g.*, *United States v. Edmond*, No. 11 CR 378, 2011 WL 6010261, at *1 (N.D. Ill. Nov. 30, 2011) (Manning, J.) ("Given the government's assurances that it will comply with its obligations under *Brady* and *Giglio,* [the defendant]'s request must be denied as moot.") (citing *United States v. Silesia Flavorings, Inc.*, No. 03 CR 851, 2004 WL 419904, at *6 (N.D. Ill. Mar. 1, 2004) (Pallmeyer, J.)); *United States v. Carman*, No. 02 CR 464, 2004 WL 1638232, at *1 (N.D. Ill. July 16, 2004) (Guzman, J.) (defense motion for discovery mooted by the government's response acknowledging its disclosure obligations).

### 2. All Materials Related to Government Monitoring of Statements, Electronic or Otherwise, by Defendants, as Well as Their Computer Activity

The government has applied the same discovery standards to defendants' electronic statements and computer activity as it has to any other evidence collected in this case. All discoverable information collected through electronic monitoring has either been disclosed to the defense or has been addressed in the government's CIPA filing.

To the extent defendants' demand for "all materials related to government monitoring," Dkt. #84 at 5, encompasses material not discoverable under Rule 16, *Brady*, *Giglio*, or the Jencks Act, their request is overbroad. The prospect of an entrapment defense does not override the discovery rules, entitling defendants to limitless "open file" discovery. *See generally United States v. Reyes*, 270 F.3d 1158, 1166 (7th Cir. 2001) ("*Brady* does not require a prosecutor to divulge every scintilla of evidence that might conceivably inure to a defendant's benefit." (internal quotation

7

marks omitted)). The government will adhere to its obligations and provide defendants with materials under Rule 16, *Brady*, and *Giglio*.

### 3. All Materials Related to Any Contact UC1, UC2, UC3, UC4, and CHS Had with Defendants, as Well as Their Identities and Biographical Information

As part of the investigation, defendants communicated electronically and in-person with four undercover FBI employees (referred to as "UC1," "UC2," "UC3," and "UC4" in the complaint affidavit and in defendants' motion) and FBI confidential human sources. All electronic communications and in-person recordings defendants had with these individuals have been given to the defense.

Defendants demand further information related to any persons who have had contact with defendants, including: true or correct name, government agency affiliation, resume, curriculum vitae, any criminal record, and contact information. Dkt. #84 at 6. But the rules of discovery do not call for the production of this information, especially based on defendants' mere assertion that they need it to "evaluat[e]" the entrapment defense. *Id.* Of course, if any of these persons is called as a witness at trial, the government will provide to the defense or present to the Court any *Giglio* material.[2]

---

[2] The government anticipates filing a separate motion seeking certain protective measures for the testifying UCs and the CHS.

8

### 4. All Materials Related to the Background, Training, or Experience of Any Government Agent Who Contacted Defendants, Including UC1, UC2, UC3, UC4, and CHS

As in any criminal case involving law enforcement, this information is not discoverable under Rule 16(a)(2). Defendants have made no specific showing why they should see this material.

If the undercover FBI employees (UC1, UC2, UC3, and UC4), the FBI confidential human source (CHS), or any other person working on behalf of the government testifies at trial, the government will honor its discovery obligations regarding those witnesses. However, defendants have not identified any theory under which materials related to the background, training, or experience of the UCs and the CHS would be discoverable.

### 5. All Agency Documents, Notes, Memos, and Forms Related to the Implementation of the Attorney General's Guidelines on FBI Undercover Operations

Citing the Attorney General's Guidelines on FBI Undercover Operations, defendants seek disclosure of various internal reports and memoranda relating to the approval and implementation of the undercover investigation. Dkt. #84 at 7–9. For example, defendants request the application for approval of the undercover investigation, any letter from the federal prosecutor concurring with the investigation, the written approval of the undercover investigation, the expense associated with the investigation, notes of meetings about the investigation, any directives regarding entrapment, memoranda regarding a review of the conduct of undercover employees, and memoranda regarding the legal sufficiency of the

evidence. Dkt. #84 at 8–9. Defendants claim these internal documents will be helpful in "deconstructing" why the FBI purportedly "manipulate[d]" defendants instead of "discouraging" them from engaging in the offense. Dkt. #84 at 9.

Each item from defendants' list, to the extent it exists, involves internal memoranda or notes maintained by the United States Attorney's Office or the FBI. Apart from the reports already disclosed (many of which are responsive to defendants' laundry list of requests) and any Jencks material that the government will disclose before trial, there exists no authority for compelling the disclosure of this type of information, though the government recognizes that, if any contains *Brady* material, it must either disclose or present to the Court such information.

An internal assessment of the case or directives from supervisors at the FBI or the United States Attorney's Office have no bearing on the defendants' entrapment defense. It is the jury that must decide whether the government induced the crime and whether defendants lacked predisposition to engage in the conduct. *See United States v. Orr*, 622 F.3d 864, 868 (7th Cir. 2010). The jury's decision will not and cannot be based on the *internal* deliberations of the FBI or the United States Attorney's Office. What matters are the defendants' interactions with the government agents in the investigation—all of which have been provided to defendants. The government's internal protocols and deliberations are irrelevant. Defendant cannot meet the materiality requirement under Rule 16(a)(1)(E).

Indeed, some of the material requested would fall under the work product privilege, protected by Federal Rule of Criminal Procedure 16(a)(2). That rule states that Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case."

Congress designed Rule 16(a)(2)'s protection of investigative materials to extend beyond the work product privilege embodied in Federal Rule of Civil Procedure 26(b)(3).[3] *United States v. Armstrong*, 517 U.S. 456, 463 (1996) (noting, "under Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case"); *United States v. Fort*, 472 F.3d 1106, 1115 (9th Cir. 2007) (noting that, "[a]lthough the Advisory Committee used the term 'work product' to describe the materials discoverable under Rule 16(a)(2), it purposefully defined the Rule's scope differently than that of Rule 26"); *United States v. Taylor*, 608 F. Supp. 2d 1263, 1268 (D.N.M. 2009) (finding information "protected by the deliberative process and work product privileges *as well as* Rule 16(a)(2)" (emphasis added)).

Rule 16(a)(2) protects not only the mental impressions, conclusions, opinions, or legal theories of the attorney for the government or other government agents, but includes all "reports, memoranda, or other internal government documents." *Fort*,

---

[3] The work product privilege in the context of civil litigation was recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947). *Hickman* provides the foundation for the protection of an attorney's documents and other tangible items under Federal Rule of Civil Procedure 26(b)(3)(B), which states that a court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."

472 F.3d at 1115 (internal quotation marks omitted); *see also United States v. Robinson*, 439 F.3d 777, 779–80 (8th Cir. 2006) (concluding that "[r]eports, memoranda, or other internal government documents created by a government agent in connection with the investigation or prosecution of the case are immune from discovery" (internal quotation marks omitted)); *United States v. LiCausi*, 167 F.3d 36, 50–51 (1st Cir. 1999) (agent's anticipated testimony about his investigation of phone records to which defense also had access); *United States v. Amlani*, 111 F.3d 705, 713 (9th Cir. 1997) (internal FBI logs of items seized from defendant's business); *United States v. Koskerides*, 877 F.2d 1129, 1133–34 (2d Cir. 1989) (IRS agent's report containing computations of defendant's tax liability).

Requiring disclosure of law enforcement internal reports and memoranda would not only contravene Rule 16(a)(2), it would have a chilling effect on the ability of law enforcement to do its job. Such disclosure would undermine the government's ability candidly to discuss and evaluate the legal and strategic options available in an investigation without the belief that the material would ultimately be disclosed. *See, e.g.*, *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) (government's predecisional death penalty evaluation form and memorandum were protected by the deliberative process privilege because the court reasoned that "'[d]iscovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent

to Seek the Death Penalty'") (quoting *United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998)); *see generally United States v. Nobles*, 422 U.S. 225, 238 (1975) (describing as "vital" the role of the work product doctrine in "assuring the proper functioning of the criminal justice system").

The government will continue to review any material in its possession—including work product—to ensure that it is complying with its discovery obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act. That approach enables the government to discharge its discovery obligations while protecting work product.

### 6. All Audio, Video, or Other Recordings of the Undercover Agents Before, During, and After Meetings with Defendants

The government has tendered the entire set of audio and video recordings of UC1, UC2, UC3, UC4, and CHS's meetings with the defendants in this case, including any recording that took place before or after they met with the defendants.

### 7. All Notes, Minutes, and Debriefing Summaries, Etc., Prepared by UC1, UC2, UC3, UC4, and CHS, Including Any Supervising Personnel, in Relation to Defendants

To the extent undercover FBI employees in this case prepared reports that reflect the substance of their communications with the defendants, all of those reports have been produced to the defense. In addition, to the extent any notes or summaries of any testifying witness constitutes Jencks materials, prosecutors will disclose any such notes or summaries before trial.

Apart from those obligations, the notes and summaries of these individuals are not subject to disclosure for the reasons discussed under request number five.

8. **All Materials Related to Internal Agency Communications and Internal Agency Directives Given to UC1, UC2, UC3, UC4, and the CHS, from Supervising Personnel, Including Materials Pertaining to Tactical and Strategic Decisions Made by Government Agents Throughout Their Contact with Defendants**

Defendant requests all "internal agency communications . . . pertaining to tactical and strategic decisions made by government agents" and any "materials related to governmental determinations or concerns that investigated activity by Mr. Schimenti or Mr. Jones was protected by the First Amendment or did not constitute a completed crime." Dkt. #84 at 11–12.

There exists no legal authority to compel disclosure of these materials. First, internal directives and strategic decisions have no bearing on the crime or an entrapment defense. Entrapment involves questions about a defendant's predisposition and any government inducement. To assess government inducement, a jury would evaluate not the internal deliberations of the FBI and the United States Attorney's Office, but the substance of defendants' interactions with the government agents as part of the charged crime, all of which have been disclosed. Second, for the reasons discussed above, this material, if it exists, would fall within the definition of work product, protected by Federal Rule of Criminal Procedure 16(a)(2).

Regarding the "First Amendment" materials, it remains unclear what the defense is seeking. The First Amendment of the United States Constitution does not alter the rules of evidence in criminal cases (specifically, Federal Rules of Evidence 401 and 403). Here, defendants are charged with attempting to providing material

support in the form of cell phones and a recruited individual (CHS) to ISIS, not any protected speech under the First Amendment, but such speech can certainly be used as evidence of the defendants' motives. For instance, such speech may be relevant evidence of defendants' predisposition when they attempted to provide material support and resources to ISIS for ideological reasons, many of which are set forth in the materials they reviewed and posted. Insofar as defendants seek "governmental determinations or concerns" in the form of internal communications or memoranda, no rule of discovery compels their disclosure, to the extent they exist. To the contrary, they would be protected work product under Rule 16(a)(2).

In short, to the extent any materials responsive to this request may qualify as Rule 16, *Brady*, *Giglio*, or Jencks material, the government will disclose them to the defense or present them to the Court. That is the extent of the government's obligations for any items responsive to this request.

> **9. All Materials Related to Any Behavioral or Social Science Expert Consulted for This Case, or Generally For Terrorism Cases, Including any Psychiatrist, Psychologist, Social Scientist, Cultural or Religious Expert, and any Military or Civilian Psychological Operations or Interrogation Expert, and Any Material Relating to Defendants and Their Families**

Defendants seek materials relating to experts, the discovery of which is governed by Federal Rule of Criminal Procedure 16(a)(1)(G). The government is willing to make disclosures of expert testimony in this case, to the extent experts will be used, at least 30 days in advance of trial. As required by the rule, the government will describe the expert witnesses' opinions, the bases and the reasons therefor, and

the witnesses' qualifications. The government hereby makes reciprocal discovery requests for disclosure of defense evidence pursuant to Federal Rule of Criminal Procedure 16(b). Given the government's willingness to provide its disclosures 30 days before trial, the Court should deny defendants' motion.

Within this same request, in addition to materials relating to experts, defendants ask for "[a]ny material relating to Mr. Schimenti and Mr. Jones and their family." Dkt. #84 at 12. As the defense is aware, the government has disclosed surveillance reports and has made available to the defense video surveillance footage of defendants. Defendants' general request for "any material" relating to defendants and their families hinges on a misapprehension of the *Brady* standard. Contrary to the assertion in defendants' motion, information about the defendants' (or their families') attendance at a mosque or defendants' "appropriate religious activity" is not *Brady* material. Dkt. #84 at 13.

Finally, defendants claim that "[a]ny discussions or interviews conducted with third parties at the mosque or at his work that had information about Mr. Schimienti or Mr. Jones, his family or friends, should . . . be produced." *Id.* Rule 16 does not contemplate that the government must disclose statements defendants made to non-governmental third persons, who then later relayed defendants' words to a government agent. This demand amounts to a request for Jencks material under the guise of Rule 16: defendants want to know what other people—potential government witnesses—have told the government about what the defendants or their families

said or did. A defendant is not entitled to pretrial discovery of the statements of a government witness, unless those statements contain *Brady* material, even if they incorporate statements made by the defendant to the government witness (unless the defendant made the statement to a person the defendant knew was a government agent and the requirements of Rule 16(a)(1)(A) are met). *See United States v. Callahan*, 534 F.2d 763, 765 (7th Cir. 1976); *see also United States v. Lakin*, No. 3:07-CR-30068-JPG-1, 2007 WL 2479331 (S.D. Ill. Aug. 28, 2007) (unreported).

The government has already produced a substantial amount of material required under 18 U.S.C. § 3500, including consensually recorded audio or video recordings involving the UCs and the CHS. To the extent that the government obtains additional statements that must be disclosed under Rule 16 or constitutional law, it will do so. Section 3500 expressly permits the government to withhold from discovery statements of government witnesses, or prospective government witnesses, until later in the proceedings.

### 10. All Materials Related to Government Activities Conducted Pursuant to Warrants, Court Orders, Subpoenas, or any Other Authorizations in Connection with This Case

The government has provided defendants with the results of the search warrants in this case, as well as copies of the search warrants and accompanying affidavits. The government has also provided defendants with the records it has received pursuant to subpoenas.

Regarding defendants' request relating to materials obtained pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"), the government has provided

17

defendants with a substantial amount of classified material. Other matters that involve classified information have been addressed in the government's CIPA filing (Dkt. #78).[4]

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny defendants' motion to compel additional discovery.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:   <u>/s/ G. David Rojas</u>
BARRY JONAS
RAJNATH LAUD
G. DAVID ROJAS
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

---

[4] The government has no intention of introducing any evidence obtained or derived from FISA collection at trial.