UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH D. JONES and<br>EDWARD SCHIMENTI | No. 17 CR 236<br><br>Hon. Andrea R. Wood |

**GOVERNMENT'S RESPONSE TO MOTION TO DISMISS
COUNT TWO OF THE SUPERSEDING INDICTMENT**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits its response to defendant Edward Schimenti's motion to dismiss Count Two of the superseding indictment, which charges him with making false statements involving international terrorism (Dkt. #86).

**I.  BACKGROUND**

Between February and April 2017, defendant, along with co-defendant Joseph D. Jones, conspired and attempted to provide material support and resources—specifically, personnel and cell phones—to the Islamic State of Iraq and al Sham ("ISIS"), a designated foreign terrorist organization. Specifically, defendants each provided cell phones for the purpose of making improvised explosive devices to an individual who, unbeknownst to defendants, was a confidential human source for the FBI (the CHS). Moreover, defendants worked together to prepare and support the CHS's purported travel overseas to fight on behalf of ISIS.

On April 12, 2017, defendants were arrested pursuant to a criminal complaint. On the date of his arrest, defendant Schimenti was interviewed at the FBI. When interviewed by the FBI, defendant Schimenti falsely claimed, among other things, that he did not know why the CHS possessed seven cell phones when stopped, that they were not for the purpose of being used in improvised explosive devices, that the CHS was going to Syria for family-related reasons, that defendant Schimenti and the CHS did not have discussions about joining ISIS, and that the CHS never told him the CHS's brother was in ISIS.

Both defendants were charged with violating Title 18, United States Code, Section 2339B(a)(1). In addition, defendant Schimenti has been charged with making false statements involving international terrorism to the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001(a)(2), the charge he challenges in the instant motion to dismiss.

## II.  ARGUMENT

Defendant argues that Count Two should be dismissed even though he lied to the FBI about significant parts of the investigation, because at the time he made those false statements, the FBI knew they were lies. Dkt. #86 at 3. Defendant's claim fails, because materiality is a question of the statement's design and intent, not whether the listener was successfully deceived. That the FBI may have known that defendant's statements were false, or may have been nearing the end of its investigation, has no bearing on whether such statements were material. Next, defendant argues that his false statements "do not concern any aspect of national

security." *Id.* at 4. Defendant's false statements, however, plainly involve international terrorism for purposes of § 1001, as they related to a plot to supply cell phones for use by ISIS to detonate explosive devices and the CHS's purported travel to join ISIS overseas.

### A. Defendant's False Statements Were Material for Purposes of 18 U.S.C. § 1001.

In his motion to dismiss, defendant misunderstands the meaning of "materiality" under § 1001. Materiality is assessed by reviewing the false statement itself, not the circumstances surrounding the government investigation. To be material for purposes of § 1001, a statement must have "a natural tendency to influence, or [be] capable of influencing, the decision of the decision making body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995); *United States v. Turner*, 551 F.3d 657, 663 (7th Cir. 2008). The standard for materiality requires "only that the false statement at issue be of a type capable of influencing a *reasonable* decisionmaker." *United States v. McBane*, 433 F.3d 344, 351 (3d Cir. 2005) (emphasis in original). Accordingly, materiality is an inquiry into the "qualities of the statement in question that transcend the immediate circumstances in which it is offered and inhere in the statement itself." *Id.*; *see also Gonzales v. United States*, 286 F.2d 118, 122 (10th Cir. 1960) (jury was instructed that materiality does not require that a false statement "actually influence" a government action); *United States v. Mehanna*, 735 F.3d 32, 54 (1st Cir. 2013) ("[T]he knowledge of the interrogator is irrelevant to the materiality of the defendant's false statements.").

3

The fact that the FBI agents were not actually misled or, as defendant claims, were nearing the end of their investigation when talking with him does not bear on the analysis. The Seventh Circuit is clear on this point. A false statement may be material even though the FBI "did not rely on it and was not influenced by it." *United States v. Dick*, 744 F.2d 546, 553 (7th Cir. 1984). The question is whether a false statement is of the type "capable" of influencing a government agency, not whether it actually did. *See United States v. Ranum*, 96 F.3d 1020, 1028 n.12 (7th Cir. 1996) (noting that "it is not necessary for an allegedly false statement to have any ill effect at all, as long as it is capable of having such an effect"). Where a defendant's statements are "aimed at misdirecting" a government agency, "this is enough to satisfy the materiality requirement of § 1001." *Turner*, 551 F.3d at 664 (finding statements to be material, despite the fact that they "probably had very little *actual* influence on the agents" due to agents' possession of incriminating recordings).

Defendant's statements regarding the cell phones he provided to the CHS, as well as his statements regarding the CHS, were clearly designed to influence the actions of the FBI. Certainly, the FBI was aware of the answers to their questions; in fact, FBI agents even warned the defendant that they were aware of the answers to their questions. Nevertheless, the materiality analysis does not rest on the actions (or reactions) of the investigating body; the focus is on the design and intent of the false statements themselves. The purpose of defendant's false statements was to divert the FBI's attention away from the CHS and onto other individuals or cause the

4

FBI to close its investigation. If believed, defendant's false statements could have had that effect. "Such misrepresentations, under normal circumstances, could cause FBI agents to re-direct their investigation to another suspect, question their informant differently or more fully, or perhaps close the investigation altogether." *McBane*, 433 F.3d at 352.

Here, the interview of the defendant occurred after arrest, the investigation was almost over, and the FBI knew the answers to its questions. But these are all "immediate circumstances" surrounding defendant's statements, not an analysis of the "inhere[nt]" qualities of the statements themselves. Defendant's false statements were capable of influencing a reasonable government agent, even if they did not actually do so, and thus were material.

Furthermore, materiality is a fact issue for the jury to decide. *See United States v. Gant*, 119 F.3d 536, 538–39 (7th Cir. 1997) ("*Gaudin* established that the question of materiality for prosecutions under 18 U.S.C. § 1001 was for the jury to decide . . . ."). Accordingly, defendant's request for this Court to determine whether his false statements were, in fact, material is premature and more appropriately presented to the jury at trial.[1]

---

[1] In his motion, defendant also requests "an evidentiary hearing based on the issues raised in this motion." Dkt. #86 at 1. As stated above, the appropriate venue for determining the question of materiality is trial, not a pretrial evidentiary hearing.

### B. The Applicable Statutory Maximum Sentence for Count Two is Eight Years' Imprisonment.

Defendant's argument that the applicable statutory maximum sentence for Count Two is five years instead of eight, seemingly in the alternative to dismissal, similarly misinterprets the statute. Defendant strangely argues that his false statements do not concern terrorism or "any aspect of national security." Dkt. #86 at 4. Yet his statements plainly do.

Under § 1001, a defendant faces a maximum imprisonment of eight years for making false statements if the statements "involve[] international or domestic terrorism." 18 U.S.C. § 1001(a). The term "international terrorism" is defined in 18 U.S.C. § 2331(1) as activities that meet three requirements: (A) they involve criminal "violent acts or acts dangerous to human life"; (B) they appear to be intended to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction, assassination, or kidnapping"; and (C) they occur primarily outside of the United States or transcend national boundaries.

As previewed by the complaint charging defendants with material support of ISIS, at trial, the government intends to submit evidence—including the violent ISIS videos that defendant watched and forwarded to others—that ISIS was involved in violent acts aimed at influencing the policy of a government and intimidating or coercing a civilian population outside of the United States. Defendant made a variety of false statements about his material support for ISIS. Defendant falsely denied that

6

the CHS intended to use cell phones for ISIS improvised explosive devices, was going to travel to Syria to join ISIS, and had a brother in ISIS. He denied having conversations with the CHS about joining or supporting ISIS. Defendant's statements involve international terrorism. *Cf. United States v. Mehanna*, 735 F.3d 32, 55 (1st Cir. 2013) (in affirming § 1001 conviction, holding that defendant's false statements had a natural tendency to influence FBI's terrorism investigation where he "plainly attempt[ed] to obscured both [his friend]'s participation in terrorist endeavors" and their discussions about "jihad and terrorist training").[2]

---

[2] Defendant claims that the "agents controlled every single aspect of this investigation" and the "only time" defendant "took an action" was after "the government agents planted the idea of obtaining cell phones in his head." Dkt. #86 at 4. To the extent defendant is shoehorning an entrapment argument against Count One, the § 2339B charge, into this motion, such an argument should be rejected. An entrapment defense "requires proof of the government's inducement of the crime and of the defendant's lack of predisposition to engage in the criminal conduct." *United States v. Johnson*, 32 F.3d 304, 307 (7th Cir. 1994). The evidence to be adduced at trial, such as the defendants' social media postings, the videos they watched and shared, and witness testimony about the defendants, will demonstrate defendants' predisposition. Entrapment is a question for "the jury, rather than for the court." *Id.* Entrapment motions are thus "seldom appropriate for pretrial resolution." *Id.* (citing *United States v. Fadel*, 844 F.2d 1425, 1430–31 (10th Cir. 1988)).

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny defendant Schimenti's motion to dismiss Count Two of the superseding indictment.

    Respectfully submitted,

    JOHN R. LAUSCH, JR.
    United States Attorney

By:   */s/ G. David Rojas*
    BARRY JONAS
    RAJNATH LAUD
    G. DAVID ROJAS
    Assistant U.S. Attorneys
    219 South Dearborn St., Rm. 500
    Chicago, Illinois 60604
    (312) 353-5300