IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSEPH D. JONES and EDWARD )<br>SCHIMENTI ) | No. 17-cr-00236<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Defendants Joseph D. Jones and Edward Schimenti have been charged in a two-count Superseding Indictment with crimes relating to their alleged support of a foreign terrorist organization ("FTO"). Specifically, Jones and Schimenti are charged with conspiring with each other to provide and attempt to provide material support and resources to the Islamic State of Iraq and al Sham ("ISIS") in violation of 18 U.S.C. § 2339B(a)(1) (Count I), and Schimenti has also been charged with making false statements involving international terrorism to the Federal Bureau of Investigation in violation of 18 U.S.C. § 1001(a)(2) (Count II). Now before the Court are Defendants' motions to dismiss each count. (Dkt. No. 85, 86). For the reasons set forth below, both motions are denied.

## BACKGROUND

When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must "view all facts in the light most favorable to the government." *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999). A court may also rely on the facts outlined in the criminal complaint and accompanying affidavit. *See, e.g.*, *United States v. Hernandez*, 61 F.3d 964, 975 (7th Cir. 2003) ("[A] bill of particulars is not required when the information a defendant needs to prepare his defense is available through [the indictment or] 'some other satisfactory form' . . . ."); *United States v. Davis*, 2019 WL 447249, at *1 (N.D. Ill.

Feb. 5, 2019) (observing that "[t]he affidavit accompanying the criminal complaint lays out many of the specific facts" in considering defendant's motion to dismiss indictment); *United States v. Biancofiori*, 2018 WL 372172, at *5 (N.D. Ill. Jan. 11, 2018) ("Although the Second Superseding Indictment may lack particulars, the Criminal Complaint and the discovery propounded in this case are more than adequate."). The facts recounted here are taken from the Superseding Indictment (Dkt. No. 71) and the affidavit filed in support of the criminal complaint (Dkt. No. 1).

Between February and April 2017, Defendants provided cell phones to an individual who they believed was going to travel to Syria to fight on behalf of ISIS, so that the phones could be used to create improvised explosive devices. Unbeknownst to Defendants, that individual was a confidential human source ("CHS") for the Federal Bureau of Investigation ("FBI"). After the CHS informed Defendants that he wished to join ISIS, Defendants worked together to prepare and support the CHS's purported international travel. For example, Schimenti voiced his support for the CHS's travel plans, took the CHS shopping in preparation for his travel, and counseled the CHS regarding how to avoid detection by law enforcement. For his part, Jones introduced the CHS to an individual who Jones believed to operate an ISIS facilitation network capable of delivering the CHS to ISIS-controlled territory in Syria.

On April 12, 2017, the FBI arrested Schimenti. After his arrest, FBI agents interrogated Schimenti about his activities and relationship with the CHS. Schimenti made several false statements during the interrogation. For example, when confronted with recordings of his conversations with the CHS, Schimenti falsely denied that it was his voice on the recordings. FBI agents also asked Schimenti about his interactions with the CHS and the CHS's plan to obtain cell phones for ISIS. Schimenti falsely answered that he thought the phones would be repaired

and used by the CHS's family in Syria and falsely denied having conversations with the CHS about using the phones as bomb detonators. Schimenti also falsely denied that the CHS said that he was traveling overseas to fight for ISIS.

Both Defendants were originally indicted in April 2017. Subsequently, in April 2018, the grand jury returned a two-count Superseding Indictment charging both Defendants with conspiracy to "provide material support and resources, namely, personnel and equipment" to ISIS (Count I), and charging Schimenti for making materially false statements "involving international terrorism in a matter within the jurisdiction of the [FBI]." (Count II). (Superseding Indictment at 1–4, Dkt. No. 72.)

## DISCUSSION

Federal Rule of Criminal Procedure 12(b) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim P. 12(b)(1). Rule 12 authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering defendant's contention that indictment must be dismissed because the statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

### I. Defendants' Motion to Dismiss Count I

At issue in Defendants' motion to dismiss Count I is the constitutional validity of § 2339B, which makes it unlawful to "knowingly provide[] material support or resources to a foreign terrorist organization, or attempt[] or conspire[] to do so." 18 U.S.C. § 2339B(1). Defendants do not dispute that ISIS has been designated as an FTO by the Secretary of State.

3

However, Defendants argue that the Court should deem § 2339B void for vagueness and overbreadth. The Court is not persuaded.

"The void-for-vagueness doctrine requires that a criminal statute define an offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited and so as to avoid arbitrary and discriminatory enforcement." *United States v. Cook*, 914 F.3d 545, 549 (7th Cir. 2019). "'What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.'" *Id.* at 549–50. (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). The Court must consider the purported vagueness of the statute here "as applied" to the facts of this particular case, rather than in the abstract. *Id.* at 550. Accordingly, Defendants must show that the statute "is vague as applied to [them]; and if the statute undoubtedly applies to [their] conduct, [they cannot] argue that the statute is vague as to one or more hypothetical scenarios." *Id.*

Defendants argue that § 2339B is unconstitutionally vague because it is unclear whether supporting an individual who purportedly desires to join but is not currently a member of an FTO, such as the CHS, constitutes the provision of material support. Defendants claim that the statute "fails to give adequate notice of guidance . . . as to what type of individual they cannot interact with." (Defs.' Mot. to Dismiss Count I of the [Superseding] Indictment as Unconstitutionally Overbroad and Void for Vagueness at 7, Dkt. No. 85.) But under the plain language of the statute, Defendants need not interact with an actual or purported member of the FTO to be charged with violating § 2339B. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." (internal quotation marks omitted)). Instead, § 2339B

4

makes it unlawful to provide, attempt to provide, or conspire to provide material support or resources to a foreign terrorist organization, without any mention of a requirement of actual interaction. Moreover, courts have consistently applied the statute in situations where the defendant did not meet any actual members of an FTO. *See, e.g.*, *United States v. Hammadi*, 737 F.3d 1043, 1045 (6th Cir. 2013) (affirming conviction under § 2339B where the defendant believed he was donating to a third-party fundraising group that supports various FTOs but he was actually interacting with a CHS); *United States v. Jumaev*, 2018 WL 3490886, at *1 (D. Colo. July 18, 2018) (upholding conviction where the defendant believed he was donating $300 to an FTO even though he "had no direct contact with the members of any terrorist organization . . . never committed any act of violence, nor did he advocate for any particular violent act").

      Here, the Superseding Indictment does not merely accuse Defendants of associating with the CHS; they have also been charged with arranging the CHS's travel and providing cell phones to ISIS. While Defendants claim that they provided the phones to the CHS for use by the CHS's family members in Syria, the Court must assume the truth of the Government's version of the facts. And according to the affidavit in support of the criminal complaint, Defendants sought to provide the phones for ISIS to use in creating improvised explosive devices and tried to support the CHS's plans to join ISIS. The Court finds that Defendants had fair notice that such conduct would run afoul of § 2339B(h), regardless of whether the CHS ultimately joined ISIS or not.

      In addition, Defendants argue that it is unclear whether they may be convicted under § 2339B(h) despite the fact that they are not members of ISIS themselves. But Defendants misread the statute, which imposes criminal liability on anyone who "has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist organization with *1 or more individuals* (who may be or include himself) *to work under that terrorist organization's*

5

***direction or control*** to organize, manage, supervise, or otherwise direct the operation of that organization." 18 U.S.C. § 2339B(h) (emphasis added). A plain reading of the provision reveals no requirement that Defendants be under the direction or control of ISIS. Rather, the Government need only prove that Defendants attempted to provide "1 or more individuals," namely, the CHS, "to work under [ISIS]'s direction or control." *Id.*; *see, e.g.*, *United States v. Shafi*, 252 F. Supp. 3d 787, 790 (N.D. Cal. 2017) (denying motion to dismiss indictment where the defendant was intercepted by federal agents at the airport before he could use his one-way ticket to Istanbul to join an FTO); *United States v. Abdi*, 498 F. Supp. 2d 1048, 1051 (S.D. Ohio 2007) (denying motion to dismiss indictment where the defendant wanted to travel to Ethiopia for military-style training so that he could eventually join al Qaeda but ultimately could not do so because his travel document application was denied).

Lastly, Defendants challenge § 2339B as unconstitutionally overbroad in violation of the First Amendment. A statute is overbroad if it "chills speech and expressive conduct protected by the First Amendment." *United States v Johnson*, 875 F.3d 360, 365 (7th Cir. 2017). A plaintiff arguing overbreadth has a high burden, as "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Defendants point to § 2339B's definition of an FTO as an organization that has "engaged or engages in terrorist activity . . . or . . . terrorism," and claim that the statute penalizes independent advocacy and mere membership in a terrorist organization, protected activities under the First Amendment. *See* 18 U.S.C. § 2339B(a)(1). But the Seventh Circuit expressly

6

rejected this argument in *Boim v. Quranic Literacy Institute and Holy Land Foundation for Relief and Development*, 291 F.3d 1000, 1026 (7th Cir. 2002), explaining that

> [u]nder section 2339B . . . [defendants] may, with impunity, become members of Hamas [an FTO], praise Hamas for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas. **Section 2339B prohibits only the provision of material support** (as that term is defined) to a terrorist organization. There is no constitutional right to provide weapons and explosives to terrorists . . . ."

*Id.* The Superseding Indictment charges Defendants with conduct beyond just voicing support for ISIS: they attempted to provide supplies that ISIS could use to create explosives and personnel that ISIS could direct to accomplish its goals. This is sufficient for purposes of § 2339B.

The Court also observes that "[a] defendant who challenges a statute as facially overbroad assumes a heavy burden for it is now well-established that such a challenge can succeed only when . . . the statute is unconstitutional in a substantial portion of the cases to which it applies." *Johnson*, 875 F.3d at 365. Defendants have not identified a single case in which a court has invalidated § 2339B for overbreadth, and the Court's own review of the case law indicates that courts have consistently held otherwise. *See Boim*, 291 F.3d at 1026; *see also United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) (upholding § 2339 against constitutional challenge for overbreadth), *cert. denied*, 566 U.S. 986 (2012); *United States v. Afshari*, 426 F.3d 1150 (9th Cir. 2005) (same); *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238 (D.C. Cir. 2003) (same).

In sun, the Court is not persuaded that Count I of the indictment should be dismissed for unconstitutional vagueness or overbreadth.

## II. Schimenti's Motion to Dismiss Count II

Count II of the Superseding Indictment charges Schimenti with making false statements in violation of 18 U.S.C. § 1001. For a conviction under § 1001, the Government must show that

7

Schimenti "knowingly and willfully made a materially false statement in connection with a matter within the jurisdiction of a federal agency." *United States v. Rahman*, 805 F.3d 822, 836 (7th Cir. 2015). Materiality depends on "whether the statement in question had a natural tendency to influence, or was capable of influencing the federal agency." *United States v. Wilson*, 879 F.3d 795, 807 (7th Cir. 2018) (internal quotation marks and bracket omitted).

In his motion to dismiss Count II, Schimenti argues that any false statements he made were necessarily immaterial as a matter of law because the agents to whom he was speaking knew the statements to be false. Schimenti contends that because the FBI had already conducted extensive surveillance and gathered sufficient evidence before his interrogation to file a criminal complaint his statements could not have had any influence. But "[u]nder section 1001 a false statement may be material even though the agency did not rely on it and was not influenced by it." *United States v. Dick*, 744 F.2d 546, 553 (7th Cir. 1984) ("We have held that a false or fraudulent statement must have had only the natural tendency to influence . . . the agency."); *see also United States v. Ranum*, 96 F.3d 1020, 1028 n.12 (7th Cir. 1996) ("[I]t is not necessary for an allegedly false statement to have any ill effect at all, as long as it is capable of having such an effect."). For example, in *United States v. Turner*, 551 F.3d 657 (7th Cir. 2008), the defendant argued that his false statements were immaterial because the FBI possessed incriminating recordings and thus "already knew the answers to the questions before they asked him." *Id.* at 662. The Seventh Circuit acknowledged that the defendant's statements "probably had very little ***actual*** influence on the agents," but nonetheless held that "the point of his [false statements to the agents] was to cast suspicion away from him, which in the ordinary course would have had an intrinsic capability—a natural tendency—to influence an FBI investigation." *Id.* at 664 (internal quotation marks omitted). Therefore, the *Turner* court concluded, "[The defendant']

8

statements were aimed at misdirecting the agents, and this is enough to satisfy the materiality requirement of § 1001." *Id.* In the same way, Schimenti made several false statements about his interactions with the CHS and the CHS's plan to obtain cell phones for ISIS that were aimed at misdirecting the FBI. For example, Schimenti falsely claimed that the CHS never told him that he was traveling to join ISIS and he did not provide the phones to be used by ISIS. The Court finds that Schimenti's statements had a natural tendency to influence the FBI's investigation of his conduct, even if the FBI had enough evidence at that point to know that he was lying.

Schimenti also argues that § 1001 does not apply to statements made after the conclusion of a federal agency's investigation, pointing out that his alleged false statements were made after the FBI had conducted extensive surveillance of his activities and consequently arrested him. But again, the Court must accept as true all facts in the Superseding Indictment, and it alleges that, at the time Schimenti made the false statements, the FBI was still "investigating possible violations of federal criminal law in connection with [Defendants] attempting to provide material support and resources to [ISIS]." (Superseding Indictment at 3.) To the extent Schimenti's argument that the FBI had already concluded its investigation relates to the immateriality of his false statements, the Court reiterates that actual reliance by the federal agency is not a requirement under § 1001.

Finally, Schimenti argues that the statutory maximum sentence for his alleged violation of § 1001 should be five years instead of eight years because his alleged false statements did not concern terrorism or any aspect of national security.[1] Under § 1001, a defendant faces a

---

[1] The Court construes Schimenti's arguments in this respect as a motion raising a defect in the indictment or information under Federal Rule of Criminal Procedure 12(b)(3)(B), rather than a motion to dismiss the indictment. *Cf. United States v. Quiceno De La Pava*, 1993 WL 50943, at *7 (N.D. Ill. Feb. 23, 1993) (adjudicating defendants' "Motion to Dismiss the Indictment or Grant Alternative Relief," which asked the court to dismiss the indictment or alternatively declare that the maximum sentence could not exceed defendants' life expectancy).

9

maximum imprisonment of eight years if his false statements "involve[] international or domestic terrorism." 18 U.S.C. § 1001(a). The term "international terrorism" is defined to include activities that meet three requirements: (1) the activities must involve "violent acts or acts dangerous to human life," (2) they must appear to be intended to "intimidate or coerce a civilian population," "influence the policy of a government by intimidation or coercion," or "affect the conduct of a government by mass destruction, assassination, or kidnapping," and (3) they must occur primarily outside of the United States. 18 U.S.C. § 2331(1). Here, the Superseding Indictment charges Schimenti with making false statements about his knowledge and support of the CHS's plan to join ISIS, as well as his provision of cell phones to ISIS for use as bomb detonators. If the CHS indeed joined ISIS, he would be adding to the ranks of an organization that engages in international terrorism. And if carried out, an ISIS bombing would qualify as an act of international terrorism. Therefore, the Court determines that Schimenti's false statements clearly concerned terrorism, and the appropriate statutory maximum sentence under § 1001 is eight years.

## CONCLUSION

For the reasons set forth above, Defendants' joint motion to dismiss Count I of the Superseding Indictment (Dkt. No. 85) and Defendant Schimenti's motion to dismiss Count II of the Superseding Indictment (Dkt. No. 86) are both denied.

ENTERED:

Dated: April 18, 2019

_____
Andrea R. Wood
United States District Judge