IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 CR 236 |
| JOSEPH JONES and | ) | Judge Andrea Wood |
| ED SCHIMENTI, | ) | |
| Defendant. | ) | |

**JOINT MOTION IN LIMINE TO PRECLUDE THE
TESTIMONY OF GOVERNMENT WITNESS JAMIL JAFFER, OR,
IN THE ALTERNATIVE, MOTION FOR A DAUBERT HEARING**

Now Comes Defendant, EDWARD SCHIMENTI, by his attorney JOSHUA B. ADAMS, and STEPHEN F. HALL, and JOSEPH JONES, by his attorney PATRICK E. BOYLE, and respectfully moves *in limine* to preclude the testimony of government witness Professor Jamil Jaffer, as such testimony is irrelevant under Federal Rule of Evidence ("FRE") 401, and is unfairly prejudicial pursuant to FRE 403. Alternatively, counsels respectfully request that the Court order a hearing pursuant to *Daubert v. Merril Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and FRE 702 regarding Jaffer's qualifications as an expert. In support of his motion, Mr. Schimenti and Mr. Jones state as follows:

**I. Background**

The government charged Mr. Schimenti and his co-defendant with conspiring to provide material support to a terrorist organization, namely "ISIS," in violation of 18 U.S.C. § 2339B. The government also charged Mr. Schimenti with knowingly making a material false statement to investigators, in violation of 18 U.S.C. § 1001. On April 29,

1

2019, the government sent the defendants a revised expert witness notice pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and Local Criminal Rule 16.1. Among the experts listed in the revised notice are Professor Jamil Jaffer, Victor Rodriguez, Melvin Smith, and Ryan Rainey. Attached hereto as Exhibit A.

Specific to Professor Jaffer, the government intends to have Jaffer testify about the foreign terrorist organization ("FTO") ISIS, including his explanation that ISIS "began as Al Qaeda in Iraq but that it eventually broke off from Al Qaeda and became its own organization." Professor Jaffer will also identify and discuss the leaders of the jihadist movement who were "discussed or followed by the defendants…." Finally, Professor Jaffer will "testify about how ISIS uses the internet and digital propaganda to inspire individuals to participate in terrorist acts," and will use examples of videos found in the possession of the defendants to further this discussion. As described in a recent status hearing, the government intends to have Prof. Jaffer provide the jury with an "ISIS 101" class, but further explained that Prof. Jaffer has not reviewed case specific materials including the complaint or indictment in this case.

Testimony related to an "ISIS 101" course has little to no relevancy in this case. This matter does not represent a situation in which the defendants left the country and aligned themselves with a particular group, wherein the government may need to present testimony that such a group was, in fact, an FTO. Instead, this is a case where undercover government agents, employees, and informants surrounded the defendants for more than two years, in an attempt to get the defendants to finally commit a crime. The testimony of Prof. Jaffer will be totally irrelevant to the elements of a prosecution pursuant to 18 U.S.C. § 2339B, and certainly has no relevancy to Mr. Schimenti's separate prosecution pursuant

to § 1001. Beyond that, Prof. Jaffer's testimony about historical and current Al Qaeda and ISIS leaders will simply prejudice the Defendants by aligning them with known and infamous terrorists the world over – none of whom the Defendants have ever been accused of associating themselves.

Additionally, Prof. Jaffer's basis and methodologies for his purported expertise are unclear at best. Thus, if Jaffer's testimony is not found to be irrelevant on its face – which counsel submit is the case – then counsel respectfully request that this Court should hold a *Daubert* hearing to confirm Jaffer's expert qualifications for this case.

## II. Argument

### a. Prof. Jaffer's testimony is not relevant and should be excluded under Federal Rule of Evidence 401

As an initial matter, Prof. Jaffer's anticipated testimony presents serious issues of relevancy. For evidence to be admissible, it must of course be relevant. *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) ("All evidentiary questions begin with Rule 402, which contains the general principle that '[r]elevant evidence is admissible' and '[i]rrelevant evidence is not,'"). Relevant evidence, as explained by FRE 401, is any evidence that "has a tendency to make a fact of consequence more or less probable." *United States v. Richards*, 719 F.3d 746, 760-61 (7th Cir. 2013), *see also Gomez*, 763 F.3d at 853 ("Rule 401 defines relevant evidence as that which is both probative (having 'any tendency to make a fact more or less probable than it would be without the evidence') and material (the fact must be 'of consequence in determining the action')").

In this case, Prof. Jaffer's anticipated testimony deals with generalized understandings of international terrorist organizations and leaders, without specific ties to the facts at issue in this case. The government never alleged in the indictment that

3

Defendants had actual ties with international terrorists or terror organizations. Rather, the government will likely argue that at all times the Defendants were only dealing with undercover agents posing as terrorists or terrorist sympathizers. Providing the jury with an "ISIS 101" course without application to this case strains credulity. Beyond that, this Academic will merely provide irrelevant historical context, and has never even looked at the materials in this case. Thus, Prof. Jaffer's anticipated testimony should be barred.

### b. Prof. Jaffer's testimony will be unduly prejudicial under Federal Rule of Evidence 403 and 704(b), and must be excluded

If this Court finds that some of Prof. Jaffer's anticipated testimony is relevant, it should still be excluded pursuant to FRE 403. The prejudice to the Defendants is twofold: first, Prof. Jaffer's testimony will effectively profile the Defendants as jihadists ("Professor Jaffer will identify and discuss leaders of the jihadist movement that were discussed or followed by the defendants…"); and second, the testimony will ultimately be used to usurp the jury's role in determining the critical issue of Defendants' predisposition contrary to the prohibition of FRE 704(b). For these reasons, Prof. Jaffer's testimony would deprive the Defendants of a fair trial.

Federal Rule of Evidence 403 "permits the district court to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice.'" *United States v. Boswell*, 772 F.3d 469, 476 (7th Cir. 2014); quoting Fed. R. Evid. 403. "Evidence is unfairly prejudicial only to the extent that it will cause the jury to decide the case on improper grounds." *United States v. Richard*, 719 F.3d 746, 762 (7th Cir. 2013), quoting *United States v. Chavis*, 429 F.3d 662, 668 (7th Cir. 2005). The amount of prejudice that may be tolerated depends on "the amount of probative value the evidence possesses." *Boswell*, 773 F.3d at 476.

Evidence that is more probative allows for greater risk of prejudice, but "less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012), quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008). Evidence that has only "marginal relevance … is more susceptible to exclusion under Rule 403's balancing of prejudice and probative value." *Boros*, 668 F.3d at 908.

In this case, the prejudicial nature of Prof. Jaffer's testimony is clear based on the government's description of his anticipated testimony, as follows:

- Professor Jaffer will explain how ISIS adherents – incorrectly – see themselves as the vanguard of new, radical form of Islam and that their goal was to prevail over the West through violent acts, to include but necessarily limited to, acts the evidence will show the defendants were aware of;

- Professor Jaffer will identify and discuss leaders of the jihadist movement that were discussed or followed by the defendants….

- Professor Jaffer will testify about how ISIS uses the internet and digital propaganda to inspire individuals to participate in terrorist acts. In particular, he will discuss some of the videos the defendants possessed, viewed or sent to third parties, such as "Flames of War."

- Professor Jaffer is familiar with terms used by the defendants…

Ex. A, pp. 4-5. The Defendants anticipate that the government will use this testimony to link the Defendants to jihadist groups with which these Defendants have no actual affiliation. Thus, there is little, if any, probative value but the suggestion that the Defendants are violent, international terrorists or jihadists is so obviously prejudicial that it must be excluded.

In addition to the risk of profiling the Defendants as violent jihadists, the Defendants have a serious concern that Prof. Jaffer's testimony would violate Rule 704(b) and unduly usurp the jury's role in determining the critical issue of the Defendant's

5

predisposition. As has been previously discussed in open court, there is an anticipated defense of entrapment in this case. To defeat an entrapment defense, the government must prove beyond a reasonable doubt that the Defendants were predisposed. A defendant is predisposed to commit the charged crime when "he was ready and willing to do so and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means." *United States v. Mayfield*, 771 F.3d 417, 436 (7th Cir. 2014). Whether the Defendants had the requisite mental state and was in fact, predisposed, is a matter for a jury, not for the government's expert to imply based on his generalized testimony as applied to the Defendants.

### c. A *Daubert* hearing should be held to determine Jaffer's expert qualification under Federal Rule of Evidence 702

Although counsel submits that the inadmissibility of Prof. Jaffer's testimony is apparent on its face and based on the Expert Notice, should this Court be inclined to allow Jaffer to testify, counsel respectfully requests that this Court conduct a *Daubert* hearing prior to trial so that the Court may effectively serve its gatekeeping role. Such a hearing would be appropriate given the unclear nature of Jaffer's expertise and the uncertainty of his methodologies.

Federal Rule of Evidence 702 "allows the admission of expert testimony if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009) (quoting Fed. R. Evid. 702). A district court serves a gatekeeping role to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Thus, as a "threshold matter 'a district court is required to determine (1) whether the expert would testify to

6

valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue.'" *Smith v. Ford Motor Co.*, 215 F.3d 713, 178 (7th Cir. 2000), quoting *Walker v. Soo Line R.R.*, 208 F.3d 581, 586 (7th Cir. 2000). This inquiry applies to both scientific and non-scientific fields of expertise. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

To determine an expert's reliability, courts are to "consider the proposed expert's full range of experience and training, as well as the methodology used to arrive at a particular conclusion." *Pansier*, 576 F.3d at 737. Further, *Daubert*, lists the following four factors that are pertinent to the court's analysis of an expert's testimony: "1) 'whether [the expert's theory] can be (and has been) tested'; 2) 'whether the theory or technique has been subjected to peer review and publication'; 3) 'the known or potential rate of error'; and 4) 'general acceptance' among the relevant scientific community." *Smith*, 215 F.3d at 719, quoting *Daubert*, 509 U.S. at 593-94.

Thus, this Court must assess Prof. Jaffer's qualifications to testify about each subject independently, and consider the relevance of each subject area and the reliability of each area of the proposed testimony. And in deciding whether to admit his expert testimony, this Court must ultimately determine whether he "ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *United States v. Kokenis*, 662 F.3d 919, 927 (7th Cir. 2001), quoting *Kumho Tire*, 526 U.S. at 156.

A *Daubert* hearing is necessary because the very basis of Jaffer's purported expertise – the background of ISIS, closely held beliefs of ISIS adherents, differences between the doctrines of ISIS and that of traditional Islam, as well as leaders of the jihadist movement, ISIS's use of the internet to disseminate propaganda, and the meanings

7

of various Arabic words – which seems to have no basis. There is no clear explanation of how Prof. Jaffer's expertise is relevant, and even more importantly, how it will aid the trier of fact in deciding the issues of this specific prosecution. The Defendants are not charged with being adherents of ISIS or with listening to the teachings of leaders of the jihadist movement. The nexus between Jaffer's testimony and the charged offenses is speculative, tenueous and merely hypothetical.

More importantly, counsel have serious doubts as to what qualifies Prof. Jaffer to interpret and offer opinions about texts that have long-held meanings and interpretations by Muslims and scholars worldwide. Meaningful inquiry into Jaffer's qualifications is essential because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. This is even more so related to Jaffer's proposed testimony because it is unclear if Prof. Jaffer's opinions are simply generalized conclusions that have no specific ties to this case, other than the fact that an internet meme or video was found on one of the Defendant's computers. Such generalized opinions are insufficient to serve as expert testimony. *Kokenis*, 662 F.3d at 927 ("Offering testimony on a theory in general, without tying it to the case on trial is insufficient,").

### III. CONCLUSION

Based on the foregoing, Mr. Schimenti and Mr. Jones respectfully request this honorable Court bar the testimony of Professor Jamil Jaffer, or, in the alternative, grant their request for a *Daubert* hearing.

Respectfully submitted,

s/ Joshua B. Adams  
Joshua B. Adams  
Counsel for Edward Schimenti

s/ Patrick E. Boyle  
Patrick E. Boyle  
Counsel for Joseph Jones

s/ Stephen F. Hall  
Stephen F. Hall  
Counsel for Edward Schimenti

Joshua B. Adams  
LAW OFFICES OF JOSHUA B. ADAMS, P.C.  
53 W. Jackson Blvd., Suite 1515  
Chicago, IL 60604  
(312) 566-9173

### CERTIFICATE OF SERVICE

I, Joshua B. Adams, an attorney, certify that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document: JOINT MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF GOVERNMENT WITNESS JAMIL JAFFER, OR, IN THE ALTERNATIVE, MOTION FOR A DAUBERT HEARING was served on, May 6, 2018, to all parties of record via the CM/ECF system.

s/ Joshua B. Adams  
Joshua B. Adams